FILED
CLERK

JGK 07/12/2017
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
                              .
Allstate Insurance Company,   .  Docket #CV-16-2802 (JFB)(AKT)
et al.,                       .
                              .
        Plaintiffs,           .
                              .  United States Courthouse
            V.                .  Central Islip, New York
                              .  June 5, 2017
Eastern Island Medical        .  2:25 p.m.
Care, P.C., et al.            .
                              .
        Defendants.           .
. . . . . . . . . . . . . . . . . . . . . . . . . .
```

TRANSCRIPT OF TELEPHONIC ORAL RULING
BEFORE THE HONORABLE JOSEPH F. BIANCO
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For The Plaintiffs:              Michael W. Whitcher, Esq.
                                 Smith & Brink, PC
                                 1205 Franklin Ave.-Ste. 260
                                 Garden City, NY 11530

                                 Richard D. King, Jr., Esq.
                                 Smith & Brink, PC
                                 1325 Franklin Ave.-Ste. 320
                                 Garden City, NY 11530

For The Defendants:              Steven J. Harfenist, Esq.
                                 Harfenist Kraut
(Eastern Island Medical          & Perlstein, LLP
Care, P.C. & Scott               3000 Marcus Ave.-2nd Fl.
Roteman, MD)                     Lake Success, NY 11042

2

<div style="margin-left:40%;">

Neil S. Torczyner, Esq.
Harfenist Kraut
& Perlstein, LLP
3000 Marcus Ave.-2nd Fl.
Lake Success, NY 11042

</div>

(Dr. Michael Small & Optimum   Anthony J. Licatesi, Esq.
Marketing Corporation)        Rubin & Licatesi, PC
                              591 Stewart Ave.
                              Garden City, NY 11530

                              Alan M. Elis, Esq.
                              Rubin & Licatesi, PC
                              591 Stewart Ave.
                              Garden City, NY 11530

(Gary Stein, Summit Realty     Alan M. Swiedler, Esq.
Holdings, LLC, Luna            Alan M. Swiedler, PC
Management Services, Inc.,     60 East Eighth Street
Vista Billing Services, Inc.)  New York, NY 10003

Audio Operator:

Transcribing Firm:            Writer's Cramp, Inc.
                              63 Dakota Drive
                              Hamilton, NJ 08619
                              609-588-8043

**Proceedings recorded by electronic sound recording, transcript produced by transcription service.**

1      THE CLERK:  Civil cause for an oral ruling in civil

2  16-2802, <u>Allstate against Eastern Island, et al.</u>  Counsel,

3  please state your appearances for the record.

4      MR. WITCHER:  Good afternoon, this is Michael

5  Witcher from Smith & Brink on behalf of the Allstate

6  Plaintiffs.  And I'm joined by Richard King, also of Smith &

7  Brink, on behalf of the Allstate Plaintiffs.

8      MR. HARFENIST:  And you have Steven Harfenist and

9  Neil Torczyner on behalf of Eastern Island and Dr. Scott

10  Roteman.

11      MR. SWIEDLER:  Alan M. Swiedler on behalf of

12  Defendants Luna and Vista, and also Summit Reality and Gary

13  Stein in this action.

14      MR. LICATESI:  Anthony Licatesi and Alan Elis on

15  behalf of Dr. Michael Small and Optimum Marketing.

16      THE COURT:  Okay, good afternoon, this Judge Bianco.

17  As you know I scheduled the conference to place my rulings on

18  the record with respect to the Motion for Preliminary

19  Injunction filed by Plaintiff, as well as the Motion to

20  Dismiss by Luna Management and Vista Billing Services, who

21  I'll refer to jointly as the Luna Defendants, and the Motion

22  to Dismiss filed by Eastern Island Medical Care and Dr. Scott

23  Roteman, who I'll refer to jointly as the Eastern Island

24  Defendants.  I decided to do an oral ruling so as not to delay

25  the case further, but you can order a copy.  It should take

1    about 15 or 20 minutes to read this into the record, and if

2    you want to order a copy of the transcript, you can do so

3    through the Clerk's Office, and then obviously we can address

4    any open issues when I'm done.

5        For reasons that I'll now explain in detail, I'm denying

6    the motions, all the motions in their entirety.  I'm going to

7    start with the Motions to Dismiss.  First with respect to the

8    standard of review for a Motion to Dismiss, it's well settled,

9    I won't belabor the record by stating it in any detail.  I

10   adopt the standard set forth in one of my recent opinions,

11   Harbor Distributing Corp v. GTE Operations Support, Inc., 2016

12   Westlaw 1228615 at page 3 (E.D.N.Y. March 28, 2016).  In

13   particular, on a Rule 12(b)(6) motion, I accept the factual

14   allegations set forth the complaint as true.  I'm drawing all

15   reasonable inferences in the Plaintiff's favor from those

16   allegations and determining whether a plausible claim exists

17   under the Iqbal Twombley standard as articulated by the

18   Supreme Court.  The Eastern Island Defendants raise four

19   issues in support of their Motion to Dismiss.  First, they

20   argue Plaintiff's RICO causes of action fail to state a claim

21   for which relief could be granted.  Second, they argue that

22   the RICO and fraud claims premised upon violations of New

23   York's licensing requirements are barred by res judicata and

24   collateral estoppel.  Third, they state that the RICO and

25   fraud claims fail to the extent they are based on a theory

1    that the services lacked medical necessity.  And finally, they

2    argue that RICO causes of action are partially barred by the

3    Statute of Limitations.  The Luna Defendants' motion is

4    premised on the Statute of Limitations argument as applied to

5    them, as well as the argument that the complaint fails because

6    it does not allege any violations by them that occurred before

7    they ceased doing business.  For reasons I'll discuss in

8    detail, I'm denying these motions because I don't believe that

9    they can be resolved on a Motion to Dismiss standard with

10   respect to the ones that argue the failure to state a claim or

11   Statute of Limitations, and I find that the claims are not

12   barred by res judicata and collateral estoppel.

13        First, on the Statute of Limitations question, the

14   Defendants take issue with the fact that Plaintiffs do not

15   specify the time period encompassed by the complaint.  They

16   state that various bills attached as exhibits to the complaint

17   cover services provided during the period of January 8th

18   through 2016 and that because civil RICO claims are subject to

19   a four-year Statute of Limitations period, any claims based on

20   conduct prior to April 2012, which is the date the complaint

21   was filed, are thus time barred -- four years from the date

22   the complaint was filed are thus time-barred.  In RICO cases,

23   the Second Circuit has made clear, I'm now quoting from <u>Koch</u>

24   <u>v. Christie's International PLC</u>, 699 F.3d 141 at 148 and 49

25   (2d Circuit 2012), {quote} "The first step in the Statute of

1    Limitations analysis is determined when the Plaintiff

2    sustained the alleged injury which the Plaintiff seeks

3    redress.   The Court then determines when the Plaintiff

4    discovered or should have discovered the injury and begins the

5    four-year Statute of Limitations period at that point" {end of

6    quote}.   Generally what is referred to the injury discovery

7    rule applies.   Under that rule, {quote} -- again this <u>Koch</u> at

8    page 250 -- "A Plaintiff's action accrues against a Defendant

9    for a specific injury on the date that Plaintiff discovers or

10   should have discovered that injury."   Also applicable in RICO

11   cases is the concept of inquiry notice under which, {quote}

12   "Where the circumstances are such as to suggest to a person of

13   ordinary intelligence that the probability that he has been

14   defrauded" {end of quote} that person has a {quote} "duty if

15   inquiry and if he omits that inquiry when it would have

16   developed the truth and shut his eyes to the facts which call

17   for an investigation, knowledge of the fraud will be imputed

18   to him."   That's end of quote from <u>Armstrong v. Mcalpin</u>, 699

19   F.2d 79 at 88 (2d Circuit 1983), and <u>Koch</u> at page 152

20   affirming the validity of the inquiry notice rule in the civil

21   RICO context.   The circumstances giving rise to the duty of

22   inquiry are referred to in the case law as {quote, unquote}

23   "storm warnings."

24        Turning to the Statute of Limitations rule and under New

25   York Law, actions based upon fraud must be commenced within

1    the greater of six years from the date the cause of action

2    accrued, or two years from the time the Plaintiff discovered

3    the fraud or couldn't, with reasonable diligence, have

4    discovered it.  That's quoting from Section 213 Subsection 8

5    of the New York CPLR.  New York law also recognizes {quote}

6    "that a Plaintiff may be put on inquiry notice which can

7    trigger the running of the Statute of Limitations if the

8    Plaintiff does not pursue a reasonable investigation" {end of

9    quote}.  That's again, the Second Circuit in Koch at page 55,

10   citing New York Law.  The Second Circuit noted in that case

11   that New York Courts will not grant a Motion to Dismiss a

12   fraud claim where the Plaintiff's knowledge is disputed.

13        Applying that standard to the instant case, the Defense

14   argued that the Statute of Limitations should not be deemed to

15   have tolled because there were {quote, unquote} "storm

16   warnings" that should have prompted exploration of the alleged

17   fraud.  In making this argument, Defendants reference the fact

18   that Plaintiffs had the necessary paperwork and access to the

19   no-fault verification procedures and therefore were able to

20   learn about the alleged fraudulent conduct at the time the

21   invoices were submitted.  Plaintiff responds with three

22   points:  First, that the Eastern Island Defendant purposely

23   withheld documents during the verification process, limiting

24   their ability to learn about the allegedly fraudulent conduct;

25   Two, that Plaintiff was entitled to rely upon the {quote,

1  unquote} "facially valid insurance claims authorized by

2  physicians and submitted by a medical services corporation"

3  {end of quote} and could not have detected the fraudulent

4  nature of the thousands of claims at issue during the limited

5  {quote} "opportunity to scrutinize and investigate the

6  propriety of apparently legitimate claims for reimbursement"

7  {end of quote}, citing the case Halima, 2009 U.S. District

8  Lexis 22443 at page 15.

9      Plaintiffs also argue, third, that this question raises a

10  fact intensive issue that cannot be decided at the Motion to

11  Dismiss stage, citing one of my prior written decisions in Sky

12  Medical Supply, Inc., 17 F.Supp.3d 207 at 222 (E.D.N.Y. 2014).

13  Plaintiff cites to analogous cases in which Courts have

14  reached this conclusion, including the Sky Medical decision,

15  as well as Allstate Company v. Lions, 843 F.Supp.2d 358,

16  (E.D.N.Y. 2012), State Farm Mutual Auto Insurance Company v.

17  CPT Medical Services, PC, 2008 U.S. District Lexis 71156 at

18  page 32 (E.D.N.Y. September 3, 2008) and SEC v. Alexander, 248

19  F.R.D. 108 at 120 (E.D.N.Y. 2007).

20      I denied the Defendant's Motion to Dismiss on grounds of

21  Statute of Limitations because I conclude that it can't be

22  decided at this juncture.  Obviously this is without prejudice

23  to bring this application at a future time in the litigation

24  after discovery has been had on that issue.

25      Plaintiff alleges that Defense acts prevented it from

1    discovering the fraud it alleges, that's in the complaint at

2    paragraph 1061, 1092, 1125, 1158 and 1191.  In particular, and

3    among other things, I'm only giving a couple of examples,

4    Plaintiff alleges that Defendants fraudulently transmitted

5    treatment records, invoices, hundreds of bills and other

6    insurance claim documents that indicated Defendant Eastern

7    Island was eligible to collect no-fault benefits under New

8    York Law; that's paragraphs 14 and 23.  According to the

9    complaint, these documents included certification that Eastern

10   Island's requests for payment were not materially false,

11   misleading or fraudulent; that's paragraphs 72 through 74,

12   paragraph 193, paragraph 1040 and 41.  Plaintiff alleges that

13   this, coupled with the fact that is {quote} "under statutory

14   and contractual obligation to promptly and fairly process

15   claims within 30 days" {end of quote} led Plaintiff to rely on

16   the fraudulent documents; that's paragraph 1047.  Accepting

17   these allegations as true and drawing all reasonable

18   inferences in the Plaintiff's favor, it's plausible that if

19   all of this is proven that Plaintiff could prove that it did

20   not discover the injury until after 2012 and that the

21   applicable Statute of Limitations would then not bar this

22   action.

23        Turning to the storm warning arguments raised by the

24   Defendants, again, I don't think this can be decided based

25   upon the pleading.  There is no indication from the complaint

1   that there were any such warnings.  Defendants themselves did

2   not point to any but instead stated that Plaintiff had the

3   necessary paperwork and access to the no-fault verification

4   procedures so that it was able to learn about the alleged

5   fraudulent conduct at the time the invoices were submitted.

6   On this point, the Court notes that Plaintiff has alleged that

7   it relied on Defendant's own fraudulently -- allegedly

8   fraudulent verification forms, and this can't be determined at

9   the Motion to Dismiss stage.  But even accepting Defendants'

10  statement that Plaintiff had access to the verification

11  procedures and could have learned about the alleged fraudulent

12  conduct, again, I believe that this type of factual question

13  can't be resolved at this stage because being in a position to

14  know about fraudulent conduct is not necessarily sufficient to

15  suggest that a person of ordinary intelligence a probability

16  that he has been defrauded, and I don't believe the storm

17  warnings exception to the discovery rule can be decided based

18  simply on the pleadings and any documents the Court can take

19  judicial notice of.

20      In making this decision, I followed similar decisions

21  that have concluded that when Plaintiffs' allegations make it

22  plausible that Plaintiff could not discover the alleged fraud

23  within the applicable Statute of Limitations, it's not

24  appropriate to decide that the actions barred by the Statute

25  of Limitations at this stage of the litigation.  These include

1    State Farm Mutual Auto Insurance Company v. Ravener, 749

2    F.Supp.2d 94 at 104 (E.D.N.Y. 2010), finding that in light of

3    Plaintiffs' allegations, it's plausible that Plaintiff could

4    not discovery Defendants' fraudulent acts until sometime after

5    the actual injury occurred and declined to make a fact

6    intensive determination of when the fraud could reasonably

7    have been discovered without discovery.  The Court reached the

8    same conclusion in State Farm Mutual Auto Insurance Company v.

9    Accurate Medical PC, 2007 Westlaw 2908205 at page 2 (E.D.N.Y.

10   October 4, 2007).

11        On a related note, for this reason, I also reject the

12   Luna Defendants' additional argument that Plaintiffs'

13   assertion that they only recently discovered the basis for the

14   RICO claims against the Luna Defendants makes it therefore

15   implausible that they could rely on the discovery rule.

16   Again, the Court accepts as true all the allegations set forth

17   in the complaint, draws all reasonable inferences in

18   Plaintiffs' favor, and can't conclude that any statement like

19   that would be sufficient to undermine the allegations

20   contained in the pleadings.

21        I also reject the Luna Defendants' argument the complaint

22   if flawed because it does not contain the precise date on

23   which the Plaintiff discovered it's injury.  As I noted, this

24   is a fact intensive inquiry and it will only be appropriate to

25   reach the question of when the Plaintiff discovered the injury

1   as the question of when the Plaintiff should have discovered

2   the injury once discovery is complete.

3       Finally, the Luna Defendants alleged that the common law

4   fraud and unjust enrichment claims against them must be

5   dismissed in light of the six-year Statute of Limitations

6   period applicable to those actions under New York law, but for

7   the same reasons, in light of the congruencies between New

8   York law and Federal law on this point, I deny the motion on

9   this ground as well.

10      Moving to the issue of the dissolution of the Luna

11  Defendants, the Luna Defendants argue that even setting aside

12  their Statute of Limitations arguments, the complaint fails to

13  allege that they were actually in business during the relevant

14  time period and should accordingly be dismissed under Rule 12

15  (b)(6).  In support of their argument on this ground, the Luna

16  Defendants submitted an affidavit of Gary Stein to confirm

17  that Luna ceased doing business in December of 2012 -- excuse

18  me, 2005 and that Vista ceased doing business in December of

19  2006, leaving any acts alleged by Plaintiffs to have taken

20  place after those dates cannot be attributable to them.

21      As a threshold matter, Plaintiffs contend the Court

22  should not consider the Stein affidavit.  I've reviewed the

23  Stein affidavit.  I've determined that its contents fall into

24  one of two categories; either it can be considered by the

25  Court in deciding a Motion to Dimiss, but it's irrelevant or

1   not dispositive on the legal question at issue at this stage,

2   or it is relevant but it can't be considered by the Court

3   because it's a matter outside the pleadings.  In particular, I

4   determined that the portions of the affidavit describing when

5   the Luna Defendants were incorporated and when they were

6   dissolved contained in paragraphs 2 through 6 of the affidavit

7   can be something the Court can take judicial notice of, see In

8   Re: Merrill Lynch and Company, 273 F.Supp.2d 351 at page 356

9   and 57 (S.D.N.Y. 2003).  Specifically Stein's assertions as to

10  the dates of Luna Defendants' incorporation and the dates they

11  resolved by proclamation of the New York Secretary of State

12  are things that can be considered, take judicial notice of.

13  Here, the sources are the certifications provided by the

14  Secretary of State and attached to the Stein affidavit as

15  exhibits.  However, these dates are not dispositive as to

16  whether the complaint survives a Motion to Dismiss because the

17  time period issue in the complaint is included within the

18  respective incorporation and dissolution dates, at least

19  partially.  Thus, the Court does not believe that this is

20  sufficient to support the Motion to Dismiss.

21       The remaining facts set forth in the affidavit which

22  pertain to Stein's various roles in the two companies and when

23  they ceased doing business, as more of a practical matter, do

24  not fall into the same category.  I reached this conclusion

25  because I can not accurately determine them based on sources

1   whose accuracy cannot reasonably be questioned.  They don't

2   meet any of the exceptions set forth in the Rules of Evidence

3   for things that the Court can consider at this stage, the

4   Motion to Dismiss stage.  So although certainly some of that

5   information would be relevant, I cannot consider them on a

6   Motion to Dismiss.

7       I also decline, in my discretion, to convert the instant

8   motion into a Summary Judgment Motion in order to consider

9   those portions of the affidavit because I believe, as a matter

10  of discretion, the Plaintiffs should get full discovery on

11  this issue, including the ability to question Mr. Stein

12  regarding those before they would have to respond.

13      Turning to the -- in summary, having considered the issue

14  of Vista and Luna being dissolved in 2010 and 2012, I don't

15  believe this is a basis, in and of itself, to dismiss the

16  Plaintiffs' complaint because allegations, as I say, encompass

17  a time period beginning in 2008.  It's just not clear from the

18  pleadings whether information the Court can consider that this

19  can be decided at this stage.  So I'm denying the motion on

20  this ground as well.

21      I'm now going to address the contention that Plaintiffs

22  failed to set forth a precise time period of the alleged

23  violations by them and that this is fatal to their RICO

24  claims.  For reasons I'll explain, I'm denying the Motion to

25  Dismiss on this ground, which I refer to as the lack of

1    specificity ground.  First with respect to particularity,

2    allegations of fraud normally must be pleaded with

3    particularity; that's obviously Rule 9(b), where, like here,

4    fraud allegations constitute the predicate acts for RICO.  The

5    particularity requirement applies and is, of course, applies

6    with respect to common law fraud claims as well.  To satisfy

7    the requirements of Rule 9(b), a Plaintiff should specify the

8    time, place and content of the alleged false representation

9    and describe with particularity any alleged fraudulent

10   transaction and how the particular mailing or transaction

11   furthered the fraudulent scheme, Zerman v. Ball, 735 F.2d 15

12   at 22 (2d Circuit 1984).  However, a complaint's use of

13   general references to misrepresentations without offering the

14   time at which those misrepresentations occurred does not

15   always warrant dismissal for failure to state a claim, see,

16   for example, Protter v. Nathan's Famous Systems, Inc., 904

17   F.Supp.101 at 106 (E.D.N.Y. 1995).

18        In deciding whether a complaint has stated a cause of

19   action based on fraud with sufficient particularity, the

20   overarching goals are, 1) to provide Defendant with fair

21   notice of a Plaintiff's claim, 2) to safeguard a Defendant's

22   reputation from improvident charges of wrongdoing, and 3) to

23   protect the Defendant against the an institution of a strike

24   suit.  That's set for in the United States ex rel Ladas v.

25   Exelis, Inc., 824 F.3d 16 at 25 and 26 (2d Circuit 2016).

1   Applying that law here, Plaintiff's RICO and common law fraud

2   claims I believe satisfy Rule 9(b)'s requirements.  Although

3   the complaint does not set forth the time of every potential

4   transaction covered by the allegation it sets forth, it does

5   identify the types of transactions at issue and the particular

6   individuals who it alleges committed the wrongdoing at issue,

7   as well as provides a series of examples of transactions that

8   are dated and identified by claim number, service, and billing

9   amount, that's complaint at paragraph 424.

10      Further, in setting forth it's allegations, the complaint

11  identifies certain events, the approximate dates of which can

12  be assumed to be known to the Defendants, such as the opening

13  of Eastern Island, that's at paragraph 112, the organization

14  and registration of various entities on the same day,

15  paragraph 119, and the hiring of Defendant Scott Roteman,

16  paragraph 264, which also serves to put Defendants, in

17  addition to the other allegations, on notice as to the time

18  period at issue.

19      Put simply, I don't believe the Defendants could read the

20  complaint and argue that they're completely unaware of which

21  transactions or conduct are at issue here.  In providing such

22  particularity in its allegations, Plaintiff has satisfied the

23  overarching goals of Rule 9(b).  It does contain the

24  particulars outlined in Rule 9(b) certainly as to the examples

25  that are given, and certainly the remainder of the complaint

1   satisfies the goals of 9(b), and I don't believe dismissal on

2   this ground is warranted under the circumstances of this case.

3        Moving to the RICO claim of distinctiveness.  Eastern

4   Island Defendants also argue for dismissal of the RICO claims

5   because they fail to meet the distinctiveness element of the

6   enterprise test.  Specifically, they assert that the complaint

7   is flawed because it means each Defendant is a participant in

8   an enterprise and pleas in the alternative, choosing various

9   of the corporate entities as the enterprise.  As such, the

10  Defendants' argument the RICO claim allege identical conduct

11  that purportedly defrauded Plaintiff into making payments to

12  Eastern Island, which were then funneled to the main Defendant

13  in the cause of action.  In response, Plaintiff argues that it

14  satisfied RICO's distinctiveness requirement because it has

15  tailored each of its RICO counts, alleging each of the

16  enterprises played a separate role in the scheme and alleging

17  how each enterprise was utilized to further the scheme's

18  objectives through distinct means.

19       I find that the Plaintiff has set forth allegations that

20  plausibly satisfy the distinctiveness requirement as explained

21  in the United States v. Private Sanitation Industry

22  Association, 743 F.Supp.114 at 1127 (E.D.N.Y. 1992).  "The

23  relevant inquiry in determining whether distinctiveness is met

24  is whether an entity named as an enterprise is also named as a

25  person that conducted the affairs of itself as an enterprise

1    through a pattern of racketeering activity" {end of quote}.

2    Because Plaintiff does not allege that the person and the

3    enterprise and its various RICO enterprises are the same

4    entity but provides pleadings in the alternative, which is

5    certainly permitted, naming different entities as enterprises

6    and alleges different persons conducted the affairs of the

7    enterprise, it has articulated a plausible claim, even if pled

8    in the alternative that it includes the distinctiveness

9    requirement under RICO.  So I deny the Eastern Island

10   Defendants' motion on this ground as well.

11        Turning to the res judicata and collateral estoppel

12   arguments, Eastern Defendants argue that Plaintiffs' RICO and

13   fraud claims premised upon violation of New York's licensing

14   requirements are barred by res judicata and collateral

15   estoppel because Plaintiff raised the issue of Eastern

16   Island's licensure as a defense to numerous arbitrations with

17   Eastern Island.  In their brief and at oral argument, Eastern

18   Island acknowledged that no arbitrator had actually explicitly

19   ruled on the issue.  Instead, they argued that Plaintiff

20   failed to prove that the Eastern Island's licensure issue was

21   a defense in those arbitrations and that at least one

22   arbitrator implicitly found that Eastern Island was not

23   fraudulently formed and controlled.  That's on page 14 of

24   their brief.  Plaintiff responds that, 1) an arbitrator never

25   decided the issue of whether Eastern Island was unlawfully

1    operating and controlled by non-physicians, 2) Plaintiff did

2    not raise a defense of fraudulent incorporation during

3    arbitrations between itself and Eastern Island, including the

4    arbitration referenced by Eastern Island, and 3) Plaintiff did

5    not have a full and fair opportunity to litigate the issue of

6    Eastern Island's alleged unlawful control by non-physicians at

7    any arbitration.

8         Applying the applicable standard governing collateral

9    estoppel as set forth in one of my recent decisions, <u>Schiff v.</u>

10   <u>SCO</u>, Joanne Stevens 16-CV-3598 (E.D.N.Y. January 6, 2007).  In

11   particular in that decision I noted that collateral estoppel

12   means simply that when an issue of ultimate fact has once been

13   determined by a valid and final judgment, that issue cannot be

14   again litigated between the same parties in any future

15   lawsuit, <u>Leather v. Eyck</u>, 180 F.3d 420 at 424 (2d Circuit

16   1999).  I further note that the parties seeking the benefit of

17   collateral estoppel bears the burden of proving the identity

18   of the issues which the party -- excuse me, while the party

19   challenging its application bears the burden of showing that

20   he or she did not have a full and fair opportunity to

21   adjudicate the claims involving those issues, <u>Khandhar v.</u>

22   <u>Elfenbein</u>, 943 F.2d 244 at 247 (2d Circuit 1991).

23        As to the second element, full and fair opportunity to

24   litigate, Courts consider a number of factors, including the

25   nature of the form and the importance of the claim in the

1    prior litigation, the incentive and initiative to  litigate

2    and the actual extent of the litigation, the competence and

3    expertise of counsel, the availability of new evidence, the

4    differences in the applicable law, and the forseeability of

5    future litigation.  That's Goodson v. Sedlack, 212 F.Supp.2d

6    255 at 257 (S.D.N.Y. 2002) quoting New York law.

7         Concerning res judicata, I note in that prior decision of

8    mine that under that doctrine, a final judgment on the merits

9    of an action precludes the parties or their privies from

10   relitigating issues that were or could have been raised in

11   that action, not just those that were actually litigated,

12   Flaherty v. Lang, 199 F.3d 607 at 612 (2d Circuit 1999)

13   quoting other cases.  "New York Courts apply a transactional

14   analysis of res judicata, barring a later claim arising out of

15   the same factual grouping as an earlier litigated claim, even

16   if that later claim is based on different legal theories or

17   seeks dissimilar or additional relief."  That's a quote from

18   Burka v. New York City Transit Authority, 32 F.3d 654 at 657

19   (2d Circuit 1994) quoting other cases.  The doctrine applies

20   only if, 1) the previous action involved an adjudication on

21   the merits, 2) the previous action involved the party against

22   whom res judicata is invoked or those in privity with them,

23   and 3) the claim asserted in the subsequent action were or

24   could have been raised in the prior action, Monahan v. New

25   York City Department of Corrections, 214 F.3d 275 at 285 (2d

1  Circuit 2000).

2       In light of the differences between arbitrations and the

3  litigations in Federal Court, whether an arbitrator's decision

4  is entitled to weight and how much weight it is entitled to is

5  a matter of the Court's discretion, <u>Alexander v. Gardner-</u>

6  <u>Denver Company</u> 416 U.S. 36 (1974), <u>McDonald v. City of West</u>

7  <u>Branch, Michigan</u>, 466 U.S. 284, a 1984 case.  Applying that

8  standard here, in light of the fact that 1) the issues in the

9  arbitration were focused on payments the Plaintiff had delayed

10  in making and not denied, 2) as Defendant's concede and

11  arbitrator did not expressly rule on the issue of Eastern

12  Island's licensure, 3) Plaintiff did not have the same access

13  to documents, especially those pertaining to <u>Mallela</u>, M-A-L-L-

14  E-L-A, as it may in this lawsuit, and 4) Plaintiff purportedly

15  did not learn of Eastern Island's fraud, which is at issue in

16  this case, until shortly before commencing this action.

17       As a matter of the Court's discretion, again, based upon

18  the information before me now, I don't believe the doctrines

19  of res judicata and collateral estoppel apply to this action

20  based upon arbitrations invoked by the Defendants, and I

21  accordingly deny the Motion to Dismiss on this ground.

22       Finally, on the medical necessity issue, the Eastern

23  Island Defendants also argue for dismissal of the RICO and New

24  York common law fraud causes of action on the ground that

25  Plaintiff's fraud claim does not satisfy RICOs reasonableness

1   requirement or New York's justifiable reliance requirement.

2   In particular, Defendants argue that Plaintiff made payments

3   for what they allegedly are alleging to be medically

4   unnecessary services, not in reliance of Defendants' alleged

5   fraud, but because Plaintiff already possessed the information

6   and documents, namely bills and treating records, that

7   purportedly demonstrate those services were medically

8   unnecessary.

9       I join decisions of other Courts -- that have been

10  reached by other Courts and reject this argument at the Motion

11  to Dismiss stage for multiple reasons.  First, the Plaintiffs

12  allege that the documents were facially valid.  Second,

13  Plaintiff alleges that New York law and it's contract with

14  Eastern Island required it to respond promptly to facially

15  valid claims, limiting its ability to scrutinize documents the

16  Defendants now argue make Plaintiffs reliance unreasonable.

17  And third, merely having the means available to determine that

18  a facially valid document is in fact not valid is not a ground

19  on which to determine, at this stage, based solely on that,

20  that there was reliance on the document or whether any

21  reliance was reasonable.  That's a fact intensive inquiry that

22  can't be decided at this stage of the litigation.  Other

23  courts reaching the same conclusion:  Allstate Insurance

24  Company v. Valley Physical Medical and Rehabilitation, PC,

25  2009 Westlaw 3245388 at page 3 and 4 (E.D.N.Y. September 30,

1   2009), <u>Government Employees Insurance Company v. Spectrum</u>

2   <u>Neurology Group, LLC</u>, 2016 U.S. District Lexis 19960 at page

3   11 (E.D.N.Y. February 17, 2016).

4        Finally, on the Motion for Preliminary Injunction, first

5   I adopt the standard for preliminary injunction set forth in

6   one of my prior decisions, <u>Grout Shield Distributors, LLC v.</u>

7   <u>Elio E. Salvo, Inc.</u>, 824 F.Supp.2d 389 (E.D.N.Y. 2011).  In

8   summary, to prevail on a Preliminary Injunction Motion, a

9   party must establish 1) irreparable harm in the absence of the

10  injunction and 2) either a) a likelihood of success on the

11  merits or b) sufficiently serious questions going to the

12  merits to make them a fair ground of litigation and a balance

13  of hardships tipping decidedly in the movant's favor.  To

14  establish irreparable harm, Plaintiff must demonstrate an

15  injury that is neither remote nor speculative but actual and

16  imminent; that's from <u>Tucker Anthony Realty Corporation v.</u>

17  <u>Schlesinger</u>, 88 F.2d 969 at 975 (2d Circuit 1989).  And I note

18  specifically that a preliminary injunction is not appropriate

19  where monetary damages will serve as adequate compensation.

20  It's well established in that case and many other cases.

21  Plaintiffs request injunctive relief 1) temporarily staying

22  while no-fault arbitrations pending between it and Eastern

23  Island, 2) temporarily staying future no-fault arbitrations

24  initiated by Eastern Island against Allstate and 3)

25  temporarily enjoining Eastern Island from filing or initiating

1    litigation in State Court relating to patient claims at issue

2    in the instant action.  Such relief Plaintiff argues will

3    prohibit the risk of inconsistent judgment, increase

4    efficiency.  At oral argument Plaintiff acknowledged that if

5    the Court denied Defendants' preclusion arguments, which it

6    has done, that the Plaintiffs would not satisfy the

7    irreparable harm requirement required for injunctive relief,

8    and having rejected the preclusion arguments based upon the

9    record before the Court, I don't believe that the issues that

10   the Plaintiffs are concerned about here that they've raised

11   demonstrate any irreparable harm or inconsistencies in

12   judgments, and I believe that they can be fully compensated by

13   monetary damages.  So for those reasons, I don't believe

14   Plaintiffs have met the irreparable harm requirement, and

15   therefore I do not address the remainder of the requirements

16   with respect to preliminary injunction.

17        So for those reasons, Defendants' Motions to Dismiss are

18   denied in their entirety and also the Motion for Injunctive

19   Relief is denied.

20        As I said, obviously this is without prejudice to raise

21   any of these various issues at the summary judgment stage,

22   once discovery has been complete.  All right, does anyone have

23   any issues they need to raise with the Court?  I apologize,

24   that took much longer than I thought.

25             MR. KING:  This is Richard King for the Plaintiffs.

1    No thank you, Your Honor.

2              MR. HARFENIST:  None for Eastern Island and Dr.

3    Roteman.

4              MR. SWIEDLER:  None for the Luna Defendants.

5              MR. LICATESI:  None for Dr. Michael Small and

6    Optimum Marketing.

7              THE COURT:  Okay, thank you very much, Counsel, have

8    a good day.

9              ALL:  Thank you.

10       (Court adjourned)

11

12                         CERTIFICATION
13   I certify that the foregoing is a correct transcript from the
14   electronic sound recording of the proceedings in the above-
15   entitled matter.
16
17
18   _Lewis Parham_                    7/11/17
19
20   _____      _____
21   Signature of Transcriber               Date